IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DEBORAH HEATER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 07 CV 5403 |
| **LOCAL UNION NO. 176,** ) | |
| **INTERNATIONAL BROTHERHOOD OF** ) | Judge Joan H. Lefkow |
| **ELECTRICAL WORKERS, AFL-CIO, and** ) | |
| **JOINT APPRENTICESHIP AND** ) | |
| **TRAINING COMMITTEE,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deborah Heater filed a four-count complaint in which she named two defendants: (1) Local Union No. 176, International Brotherhood of Electrical Workers, AFL-CIO ("Union") and (2) Joint Apprenticeship and Training Committee[1] ("JATC") (collectively, "defendants"). Counts I is a claim for discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Count II alleges a hostile work environment in violation of the ADA. Count III is a claim for sexual harassment and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Count IV is a supplemental state law claim for intentional infliction of emotional distress ("IIED"). Before the court is defendants' motion to dismiss Counts I, II and

---

[1] In their motion to dismiss, defendants contend that Heater incorrectly named the second defendant as "Joint Apprenticeship and Training Committee" when the correct name of that entity is "NECA-IBEW Local 176 Joint Apprenticeship Training Committee (JATC)." Defs.' Mot. at 1. For purposes of this opinion, the court will refer to the second defendant simply as "JATC." According to the complaint, the JATC is a subdivision of the Union tasked with the duty of providing job training and education to members of the Union.

IV pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion to dismiss [#14] will be denied.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint and draws reasonable inferences from those facts in favor of the plaintiff. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a motion under Rule 12(b)(6), the Seventh Circuit has stated that the complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *EEOC* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 776–77 (7th Cir. 2007) (citing *Bell Atl. Corp.* v. *Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1964, 167 L.E.2d 929 (2007)). The allegations in the complaint must also be "enough to raise a right to relief above a speculative level." *Twombly*, 127 S. Ct. at 1965.

## BACKGROUND

Heater was a member of the Union from approximately 2002 through May of 2005, during which time she received job apprenticeship training provided by the JATC. As part of this training, she was required to take periodic assessment tests. Heater's union membership and involvement in the JATC training program were ultimately terminated as a result of poor performance on these tests.

Heater alleges that she suffers from Adult Attention Deficit Disorder ("ADD"), that the Union was aware that she suffered from this disorder, and that the Union unreasonably refused to accommodate her learning deficiencies that resulted from her impairment. Heater also alleges

that the Union's instructors, senior members, officers, and agents inappropriately revealed the fact that she suffered from this disorder to other members and intentionally tried to humiliate and harass her in ways relating to her disability. Heater further alleges that the Union held its male members to lower job performance standards and did not terminate their membership on the basis of similarly poor test performance.

Heater also alleges that the union employees and members subjected her to "repeated and pervasive verbal sexual advances, innuendo, suggestive sexual comments, degrading and derogatory remarks, and discriminatory, differential and unfair treatment because of her gender." Pl.'s Compl. ¶ 25. She alleges that this harassment was severe and continued on regular basis throughout her time as a union member, despite her complaints to union supervisors. Heater's supervisors allegedly took no action to control or prevent the harassment from the other union members and officers. Heater claims that this made her work environment "both subjectively and objectively . . . hostile, threatening and unsafe" and "interfered with [her] ability to adequately perform her job." Pl.'s Compl. ¶ 41.

As a result of these working conditions, Heater claims to have suffered from, among other things, lost wages and benefits, future pecuniary losses, and emotional distress.

## DISCUSSION

### I. Preemption Under the National Labor Relations Act and the Illinois Human Rights Act

The Union argues that the jurisdiction of this court is preempted by both (a) Section 301 of the National Labor Relations Act ("NLRA") and (b) the Illinois Human Rights Act ("IHRA"). Heater contends that defendants' jurisdictional arguments are beyond the scope of this motion, because the motion was brought pursuant to Rule 12(b)(6). Regardless of which rule defendants cited in their motion, however, Rule 12(h)(3) provides that "[i]f the court determines at any time

that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also BEM I, L.L.C.* v. *Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002) ("[L]awyers who practice in federal court have an obligation to assist the judges to keep within the boundaries fixed by the Constitution and Congress."). The court will therefore consider both of defendants' jurisdictional arguments.

First, defendants argue that the jurisdiction of this court is preempted by Section 301 of the National Labor Relations Act ("NLRA"), which provides the National Labor Relations Board ("NLRB") with exclusive jurisdiction over claims involving unfair labor practices. Defendants rely on the Supreme Court's assertion in *San Diego Building Trades Council* v. *Garmon*, 359 U.S. 236, 245, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959), that "when an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* at 245. Standing alone, this quote might be read to suggest that federal courts and state courts alike do not have jurisdiction in any labor dispute that arguably falls within these sections of the NLRA. When read in the context of the rest of the decision and in light of the purpose of federal statutory preemption, however, it is clear that the *Garmon* Court did not intend to remove all labor disputes from the jurisdiction of the federal courts. *See, e.g.*, *Smith* v. *Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 755 (9th Cir. 1997) ("[T]he Supreme Court has indicated on several occasions that *Garmon* preemption is not implicated where the potential conflict is with federal law.").

The doctrine of statutory preemption invoked by the Court in *Garmon* is based on the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, which declares that federal laws, as the supreme law of the land, will override conflicting state laws. *Smith,*

4

125 F.3d at 755. Accordingly, while state laws can be preempted by federal laws, federal laws generally do not preempt other federal laws pursuant to the Supremacy Clause. *See id.* ("[The Supremacy Clause] is only implicated when a case involves a conflict between a federal and a state law.").[2] In keeping with this principle, the Supreme Court spent much of its opinion in *Garmon* discussing the importance of denying state courts jurisdiction over labor issues covered by the NLRA. *See Garmon*, 359 U.S. at 241–46. As the Court explained,

> When it is clear or may fairly be assumed that the activities which a *State* purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that *state* jurisdiction must yield. To leave the *States* free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by *state* law. . . . [T]o allow the *States* to control conduct which is the subject of national regulation would create potential frustration of national purposes.

*Id.* at 244 (footnote omitted) (emphasis added). The reference to federal courts in the *Garmon* quotation relied upon by the Union[3] must therefore be referring to federal courts primarily in their capacity as adjudicators of state (as opposed to federal) law, such as in cases before them by virtue of diversity jurisdiction.

The Ninth Circuit reached a similar conclusion regarding NLRA preemption in a comparable case, holding that the plaintiffs' ADA claims against their employer were not preempted by the NLRA. *Smith*, 125 F.3d at 757. The *Smith* court relied in part on its reasoning from an earlier case:

---

[2] *See also Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 48–49, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974) (finding that the legislative history of another federal employment-discrimination statute, Title VII, "manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination.") (footnotes omitted).

[3] *Garmon*, 359 U.S. at 245 ("When an activity is arguably subject to § 7 or § 8 of the Act, the States *as well as the federal courts* must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.") (emphasis added).

5

> The use of the term "preemption" and the [district] court's citation to [*Garmon*] are inapposite. Issues of preemption are implicated where a state has acted in an area which is reserved to the federal government, in violation of the Supremacy Clause. *Garmon* involved a state court's attempt to regulate activity which was arguably subject to the NLRA and within the primary jurisdiction of the NLRB. In contrast, the present action raises questions concerning the overlap of two federal statutes.

*Id.* at 756 (quoting *Brock* v. *Writers Guild of Am.*, 762 F.2d 1349, 1352 n.4 (9th Cir.1985)).

The Seventh Circuit addressed a similar issue in *Palumbo Bros.*, where it held that the NLRA did not preempt federal jurisdiction over a criminal RICO claim. 145 F.3d at 863. The court cited *Smith* favorably, and similarly reasoned that "the intersection of, or potential conflict between, *federal* statutes does not implicate the constitutional concerns underlying *Garmon* preemption." *Id.* at 862. The court also observed that "with this articulated focus on preventing state interference with federal labor policy, courts have indicated a hesitation to extend *Garmon* preemption to cases involving conflicts between the NLRA and other federal statutes." *Id.* Nevertheless, the court stated in a footnote that it was not disturbing previous decisions in which it had "held that *Garmon* preempts a *civil* cause of action when the independent federal claim clearly involves a legitimate labor dispute." *Id.* at 862 n.7 (citing *Talbot* v. *Robert Matthews Distrib. Co.*, 961 F.2d 654, 662 (7th Cir. 1992) (preempting *civil* RICO claim under the NLRA); *Underwood* v. *Venango River Corp.*, 995 F.2d 677, 685 (7th Cir.1993) (preempting *civil* RICO claim under the Railway Labor Act)). Despite the Seventh Circuit's reluctance to overturn those earlier decisions, however, its reasoning in *Palumbo Bros.* appears to support the conclusion that federal claims such as those at issue in this case should not be preempted under *Garmon*. Indeed, the Seventh Circuit suggested that "even if *Garmon* preemption does apply to the intersection of federal statutes"—a question that it deemed unnecessary to resolve at that time—such preemption would be implicated only where a federal cause of action presents an

"unresolvable conflict" with the NLRA that "requires [the court] to apply one body of law . . . to the exclusion of the other." *See id.* at 863.

Furthermore, the Supreme Court has stated that "federal courts may decide labor law questions that emerge as *collateral issues* in suits brought under independent federal remedies. *Connell Constr. Co.* v. *Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 626, 95 S. Ct. 1830, 44 L. Ed. 2d 418 (1975) (emphasis added). The Seventh Circuit employed this principle in *Talbot* v. *Robert Matthews Distributing Co.,* 961 F.2d 654 (7th Cir. 1992), where it stated that "[e]ven if the defendants' conduct is arguably prohibited under § 8 of the NLRA . . . the plaintiffs' claim is not preempted under *Garmon* if the activity regulated is merely a peripheral concern of the labor laws." *Id.* at 660 (citing, *inter alia*, *Garmon*, 359 U.S. at 243–44).

The Union urges the court to "view [Heater's] claims as essentially seeking to remedy an unfair labor practice—the unilateral adoption by the JATC of a rule of test passing in order for a person to be advanced to the next year of apprenticeship school, rather than seeking to remedy a discriminatory practice." Defs.' Reply at 13. It seems clear, however, that the gravamen of Heater's allegations is not that the Union unfairly required its members to pass these tests but, rather, that it unfairly neglected to make reasonable accommodations for her disability. Thus, the labor issue in this case is collateral to the claims under an independent federal remedy, and the federal court should maintain jurisdiction over these claims. The jurisdiction of this court is therefore not preempted by §301 of the NLRA.

Second, the Union contends that the court does not have jurisdiction over Heater's IIED claim because it is preempted by the Illinois Human Rights Act ("IHRA"). The IHRA declares that, "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over

7

the subject of an alleged civil rights violation other than as set forth in this Act." 775 Ill. Comp. Stat. 5/8-111(D). The Seventh Circuit has stated that the "distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it." *Naeem* v. *McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006) (internal quotation marks omitted). Thus, "if a plaintiff can allege facts sufficient to establish elements of a tort, that tort is not preempted by the IHRA." *Id.* at 602–03 (citing *Maksimovic* v. *Tsogalis*, 687 N.E.2d 21, 23–24, 177 Ill. 2d 511, 227 Ill. Dec. 98 (1997)).

The issue here is thus whether Heater's allegations, if proved, could constitute IIED apart from the allegations of discrimination. "Under Illinois law, the elements of the tort of intentional infliction of emotional distress are as follows: 1) extreme and outrageous conduct by the defendants; 2) intent to cause, or a reckless disregard of the probability of causing, emotional distress; 3) severe or extreme emotional distress suffered by the plaintiff; and 4) actual and proximate causation of the emotional distress by defendants' outrageous conduct." *Lewis* v. *Cotton*, 932 F. Supp. 1116, 1118 (N.D. Ill. 1996) (citations omitted).

Heater alleges that defendants were responsible for "continuously and repeatedly verbally harassing Plaintiff, revealing the Plaintiff's disability to other [*sic*], for no reason other th[a]n to humiliate the Plaintiff, and denying the Plaintiff training and job opportunities." Pl.'s Compl. ¶ 96. While some of these allegations are factually related to the conduct alleged in the civil rights claim, "the critical analysis focuses on legal duties, not facts." *Spahn* v. *Int'l Quality & Productivity Ctr.*, 211 F. Supp. 2d 1072, 1076 (N.D. Ill. 2002) (citing *Maksimovic*, 687 N.E.2d

at 24). These allegations do not rely on duties created by the IHRA. Rather, these allegations are actionable because a reasonable jury could conclude that the conduct, if specifically directed at Heater and done with the intent to cause her emotional distress, did in fact cause her to suffer severe or extreme emotional distress. Likewise, even if Heater is ultimately unable to prove that defendants' conduct constitutes a civil rights violation under Title VII or the ADA, she might still be able to prove the elements of her IIED claim. Her IIED claim is, therefore, not barred by the IHRA.

**II. The IIED Claim**

As discussed above, one of the required elements of a claim for IIED under Illinois law, is a showing that "the defendant's conduct was extreme and outrageous." *Van Stan* v. *Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997). Under Illinois law, "[c]onduct is extreme and outrageous when reciting the facts to an average community member would arouse her resentment against the actor, and lead her to exclaim, 'outrageous!'." *Anast* v. *Commonwealth Apartments*, 956 F. Supp. 792, 803 (N.D. Ill. 1997). In contrast, "mere insults, indignities, threats, annoyances, petty oppressions or trivialities" are not extreme and outrageous. *Id.* The plaintiff here sufficiently alleges a pattern of continuous and extreme verbal harassment aimed to humiliate and upset the plaintiff. This behavior seems to go beyond mere insults and annoyances to the point where it could cause an average community member to find the behavior outrageous.

Defendants correctly point out that Illinois courts are hesitant to find IIED claims in employment situations due to the concern "if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action." *Graham* v. *Commonwealth Edison*

9

*Co.*, 742 N.E.2d 858, 318 Ill. App. 3d 736, 252 Ill. Dec. 320 (Ill. App. Ct. 1st Dist. 2000). What the Union fails to add, however, is that courts also consider whether those allegedly responsible for the outrageous conduct have abused a position of authority. *See James F. Jackson* v. *Local 705, Int'l Bhd. of Teamsters, AFL-CIO*, No. 95 C 7510, 2002 WL 460841, at *15 (N.D. Ill. 2002) ("The extreme and outrageous character of the conduct can arise from the abuse of a position of power.") (internal quotation marks omitted). The conduct that Heater has alleged is sufficient to withstand a motion to dismiss. It goes beyond mere workplace stressors and reaches a level of outrageous behavior that union members and employees alike should not be expected to endure, particularly where the alleged harassment and verbal assaults came from her instructors and officers in the union.

Heater has also sufficiently alleged that defendants intended to inflict emotional distress and that these actions caused her severe emotional distress. She allegedly reported the inappropriate conduct to her superiors, and thus put the Union on notice that it was occurring and that it was negatively affecting her. Despite her complaints, the Union allegedly continued to permit the harassment to occur.

Defendants have therefore failed to demonstrate that Heater's IIED claim fails as a matter of law.

**III. ADA Claims**

Defendants argue that ADD "does not qualify as a 'disability' under the Act and therefore is not protected by the ADA." Def.'s Mot. Memo. at 12–13. This argument, however, overlooks the fact that the ADA does not provide an enumerated list of disabilities, but rather requires a particularized inquiry into the extent of an individual's impairment. *Sutton* v. *United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999).

The Equal Employment Opportunity Commission ("EEOC") defines the "disability" of an individual as (1) a physical or mental impairment that substantially limits one or more of her major life activities; (2) a record of such an impairment; or (3) being regarded by the covered entity as having such an impairment. 29 C.F.R. § 1630.2(g). Major life activities include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1630.2(i), though "[t]his list is not exhaustive." 29 C.F.R. § 1630, App. (interpretive guidance on 29 C.F.R. § 1630.2(i)). These activities are the sort "that the average person in the general population can perform with little or no difficulty." *Id.* The EEOC describes an individual as substantially limited if she is either "[u]nable to perform a major life activity that the average person in the general population can perform," or "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(i)–(ii).

The plaintiff has sufficiently alleged that she is substantially limited in the major life activity of learning. Specifically, Heater alleges that she suffers from ADD, which limits her ability to "learn, comprehend, and process information through traditional methods of learning." Pl.'s Compl. ¶¶ 24–25. Because learning is one of the enumerated major life activities and because Heater has alleged that ADD substantially limits her performance of that activity, the plaintiff could prove that she meets the requirements for protection under the ADA.

Defendants further assert that because ADD is a "widespread, correctable impairment[]," Heater is not entitled to protection under the ADA. Def.'s Reply at 3. Defendants rely on *Sutton*, 527 U.S. 471, to support that assertion. In that case, the Supreme Court determined that

correctable measures the individual could use to mitigate his or her impairment should be taken into consideration when assessing the extent of the disability. *Sutton*, 527 U.S. at 488–89. Contrary to defendants' assertion, however, *Sutton* suggests not that individuals suffering from disorders need to start taking corrective measures they are not already taking but, rather, that courts should consider any mitigating measures an individual is currently using in order to correctly assess her actual condition. *See id.* at 482–83 ("[*I*]*f a person is taking measures* to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act.") (emphasis added). Indeed, in affirming the appellate court's holding that the plaintiffs had failed to state a claim, the Supreme Court pointed out that plaintiffs themselves had "allege[d] that with corrective measures . . . they function identically to individuals without a similar impairment." *Id.* at 488.

In contrast to *Sutton*, where the plaintiffs alleged that corrective measures allowed them to function normally, Heater does not allege that ADD can—as defendants assert—be controlled by medication. Rather, Heater specifically asserts that the drugs commonly prescribed for ADD do not effectively mitigate her disorder. Pl.'s Resp. at 12. Thus, while *Sutton* requires the court to take into account any corrective measures Heater is currently using, it does not require courts to blindly speculate as to how medication might have potentially affected Heater's test performance had she taken it—particularly on a motion to dismiss, where the allegations of the complaint must be accepted as true.

**CONCLUSION AND ORDER**

For the foregoing reasons, defendants' motion to dismiss [#14] is denied.

Dated:  September 15, 2008          Enter: _____
                                              JOAN HUMPHREY LEFKOW
                                              United States District Judge